UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODERICK SPEARS,

        Petitioner,

                                            Case No. 10-cv-11488

v.

                                            HON. MARK A. GOLDSMITH

RANDALL HAAS,[1]

        Respondent.

_____/

**OPINION AND ORDER**
**(1) DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS; (2)**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY; AND (3) GRANTING**
**PERMISSION FOR LEAVE TO APPEAL IN FORMA PAUPERIS**

**I. INTRODUCTION**

Petitioner Roderick Spears, currently confined at the Macomb Correctional Facility in

New Haven, Michigan, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 (Dkt. 1).  After a jury trial in the Wayne County Circuit Court, Petitioner was convicted

of the following: (i) voluntary manslaughter, Mich. Comp. Laws § 750.321; (ii) assault with

intent to do great bodily harm, Mich. Comp. Laws § 750.84; (iii) felon in possession of a firearm,

Mich. Comp. Laws § 750.224f; and (iv) commission of a felony with a firearm.  Mich. Comp.

Laws § 750.227b.  The trial court sentenced Petitioner as a third-time habitual-felony offender to

10-to-15 years' imprisonment for the manslaughter, five-to-10 years' imprisonment for the

_____

[1] Petitioner has been transferred to the Macomb Correctional Facility, where Randall Haas is the
warden. The only proper respondent in a habeas case is the habeas petitioner's custodian, which,
in the case of an incarcerated habeas petitioner, is the warden of the facility where the petitioner
is incarcerated.  See Edwards v. Johns, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); see also
Rules Governing § 2254 Cases, Rule 2(a), 28 U.S.C. foll. § 2254.  Therefore, the Court
substitutes Warden Randall Haas in the caption.

assault, three-to-five years' imprisonment for the felon in possession, and a consecutive two-year term for the felony-firearm charge.

The original petition raised five claims. The case was then stayed on September 26, 2011, after Petitioner filed a motion to return to state court to exhaust additional claims. See 9/26/2011 Op. & Order (Dkt. 15). The case was reopened on February 25, 2013, see 2/25/2013 Order (Dkt. 20), and Petitioner filed an amended petition adding three claims (Dkt. 19).

The petition and amended petition together raise the following eight claims: (i) Petitioner was denied a fair trial when a prosecution witness wore a tee shirt that referenced the victim's death; (ii) the prosecutor presented false testimony at trial; (iii) false testimony presented at the preliminary examination should have resulted in dismissal of the charges; (iv) Petitioner was denied his right to the effective assistance of appellate counsel when his attorney failed to raise these issues on direct appeal; (v) Petitioner was entitled to an evidentiary hearing in state court on his claim of ineffective assistance of counsel; (vi) the prosecutor failed to endorse and call three witnesses at trial; (vii) Petitioner was denied the effective assistance of counsel for failing to locate and call these three witnesses; and (viii) Petitioner was denied his right to an evidentiary hearing in state court on the impact of the failure of these three witnesses to testify.

The Court denies the petition because Petitioner's claims are barred from review by Petitioner's state-court procedural defaults and because they lack merit. The Court also declines to issue Petitioner a certificate of appealability, but the Court will grant Petitioner permission to proceed on appeal in forma pauperis.

## II. BACKGROUND

Petitioner was originally charged with first-degree murder and lesser charges related to the shooting death of Gary Rouse. Petitioner admitted that he shot Rouse, but he claimed he did so in self-defense when Rouse tried to rob him.

The evidence presented at trial indicated that on June 29, 2005, David Todd was driving down a street in Detroit when he saw Gary Rouse and Rouse's brother, Antoine Williams. Todd parked his van and started talking with Williams while Rouse continued walking. Another man, "Slim," was also present in his own vehicle, and the three men talked about the upcoming firework show in Detroit.

Meanwhile, Rouse continued walking to a nearby house. Petitioner was standing on the porch of the house when Rouse approached. Williams saw Petitioner and Rouse talking on the porch. Williams testified that he then heard sounds of a scuffle and shots coming from the direction of the porch. Both Todd and Williams turned toward the house and saw Petitioner shooting at Rouse, who was running away. Williams then made eye contact with Petitioner, and Petitioner pointed the gun at Williams and Todd and fired additional shots towards them. Todd and Williams ran to the passenger side of Slim's van, and Todd was shot in the arm. Todd called 911 and reported the shooting.

After the shooting, Williams ran to the corner, where he saw Rouse lying face-down in the grass directly behind the house where Petitioner had been. Williams saw a bullet wound in Rouse's back. Rouse was later declared dead at a hospital. The medical examiner testified that he died as the result of a single gunshot wound to the back. Todd testified during the trial while wearing a shirt that read "RIP SoSo," which was Rouse's nickname. The shirt also had iconography that defense counsel suggested Rouse was the member of a street gang.

Police responded to the scene and found one bullet casing on the grassy area between the sidewalk and the house, and six casings on the porch.  Immediately inside the house the police found 23 small bags of cocaine.

That afternoon, investigator James Fischer received an anonymous call saying that the individual involved in the shooting wanted to turn himself in.  Eventually, Petitioner talked to police, and he presented himself at a location for transportation to the police station.  During the ride, Petitioner began to talk about the shooting, saying he killed Rouse in self-defense.  Petitioner also directed the police to a wooded area near a church parking lot where he had disposed of the gun.

At the station, the police performed a gunshot residue test on Petitioner, and gunshot residue was found on Petitioner's left hand and on his shirt.  Petitioner then gave a statement.  He said he was visiting someone named Mary around noon at the house on Racine Street.  As Petitioner started to leave, he heard someone call his name, whom Petitioner identified as Rouse.  Rouse asked Petitioner what the people across the street were arguing about.  When Petitioner replied that he didn't know, Rouse spun around with a gun in his hand and told Petitioner not to move and to give Rouse his money.  Petitioner said he grabbed the gun and, during the struggle, the gun fired three times.  Rouse let go of the gun and stumbled backwards.

Petitioner said that Rouse started walking toward Petitioner again, so Petitioner raised the gun and pointed it at Rouse.  Petitioner explained that Rouse stopped and started to turn away when he pulled the trigger, explaining why Rouse was shot in the back.  Petitioner said he saw three men watching by a van and was afraid, so he shot three more times in their direction.

Petitioner said he then ran, telling people that Rouse tried to rob him.  He said that Rouse was after the drugs in the house, and that Petitioner turned himself in because he did not intend to hurt or kill anyone, but was merely was defending himself.

Marian Marshall testified at trial that she was working in the house when she heard Petitioner yell.  She looked out the window and saw Petitioner picking himself up off the floor of the porch with a gun in his hand.  Marshall jumped off a chair and laid on the floor, and then she heard shots.  After a pause, she heard additional shots.  Petitioner yelled at her to get out of the house because they were being robbed.

Sonya Stinson, a neighbor who was across the street at the time of the shooting, testified that she saw four men get out of the van before the shooting and three get back in the van after the shooting.

Following arguments and instructions, the jury found Petitioner guilty of the lesser offense of voluntary manslaughter, as well as the other offenses indicated above.

After he was sentenced, Petitioner filed an appeal of right, raising the following claims:

   i.   There was insufficient evidence to support the verdict of guilty of manslaughter.

   ii.   The defendant-appellant had a valid defense of fleeing felon to the murder charge.

   iii.   There was insufficient evidence to support the verdict of guilty of assault with intent to do great bodily harm.

   iv.   Defendant-appellant had a valid defense of duress to the felon in possession charge.

   v.   Defendant-appellant had a valid defense of self defense to the manslaughter and assault with intent to do great bodily harm less than murder.

5

      vi.    Defendant-appellant was denied a fair trial by the prosecutor and/or police departments handling of the investigation regarding the gun, magazine, and bullets.

     vii.    Defendant-appellant was denied effective assistance of counsel.

The Michigan Court of Appeals denied a motion for remand by order dated September 29, 2006. Petitioner then filed a pro per brief to the Michigan Court of Appeal seeking review of the following additional claim:

> The evidence abducted [sic] at the preliminary examination fail [sic] to establish probable cause to bind defendant over for trial on a first-degree murder charge, and therefore the district court abused its discretion.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. People v. Spears, No. 267572, 2007 WL 1203537, at *6 (Mich. App. Apr. 24, 2007) (per curiam) (Dkt. 9-8).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application in a standard order. People v. Spears, 737 N.W.2d 736 (Mich. 2007) (Dkt. 9-9).

On May 15, 2008, Petitioner filed a motion for relief from judgment in the trial court, raising the following claims:

      i.    Defendant was denied the right to an impartial jury when David Todd was permitted to wear a tee-shirt depicting the deceased while testifying. Such a practice interferes with the right to a fair trial by an impartial jury free from outside influences.

      ii.    Defendant was denied his state and federal due process rights where his conviction was obtained through the use of false and perjured testimony. The numerous instances of prosecutorial misconduct and violations of discovery violated Mr. Spears' right to a fair trial, requiring reversal.

6

iii. The law of the case doctrine does not control where the legal and factual fabric and content of the case has changed drastically. There is no longer probable cause to support Mr. Spears' conviction.

iv. Defendant was denied effective assistance of appellate counsel where his appellate attorney did not raise the above issues in his appeal by right or in a motion to remand.

v. Defendant is entitled to an evidentiary hearing regarding the ineffective assistance of both trial and appellate counsel.

The trial court denied the motion by order dated July 30, 2008. The Court found that review of Petitioner's claims was foreclosed under Michigan Court Rule 6.508(D)(3) because Petitioner had failed to show "good cause" for failing to raise the claims in his direct appeal. People v. Spears, No. 05-7354-01, at 61-62 (cm/ecf pages) (Wayne Cnty. Cir. Ct. Jul. 30, 2008) (Dkt. 9-11).

Petitioner appealed, but the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal for failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D). People v. Spears, No. 288118, at 64 (cm/ecf page) (Mich. Ct. App. Mar. 18, 2009) (Dkt. 9-11). The Michigan Supreme Court subsequently denied relief, citing the same court rule. People v. Spears, 774 N.W.2d 903 (Mich. 2009) (Dkt. 9-12).

Petitioner then commenced this action on April 14, 2010. Over a year later, on August 25, 2011, Petitioner filed a motion to stay the case so he could exhaust a new claim that he asserted was based on newly discovered evidence:

Spears is entitled to a new trial based on newly discovered evidence whereas the prosecutor knew of a witness Amondo Stewart['s] statement that would have helped defendant but the prosecutor failed to endorse the witness as well as denied defendant discovery of the witness's statements.

Pet'r Mot. at 3 (Dkt. 14).

7

The Court granted the stay, 9/26/2011 Op. & Order (Dkt. 15), and Petitioner returned to the trial court to file a second motion for relief from judgment.

By order dated February 15, 2012, the trial court denied the motion for relief from judgment under Michigan Court Rule 6.502(G) because it did not meet the requirements for filing a second or successive motion for relief from judgment. Petitioner filed an application for leave to appeal, but the Michigan Court of Appeals similarly dismissed the appeal for lack of jurisdiction because Petitioner had earlier filed a motion for relief from judgment and met none of the exceptions under Rule 6.502(G)(2). People v. Spears, No. 309966 (Mich. Ct. App. June 8, 2012) (Dkt. 23-1). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but that court also denied relief under Rule 6.502(G). People v. Spears, 822 N.W.2d 589 (Mich. 2012) (Dkt. 23-2).

### III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt."  Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted).  A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation marks).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Id. (citation omitted).  Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  Id.  Habeas relief is not appropriate unless each ground

that supported the state-court's decision is examined and found to be unreasonable under the AEDPA.  See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be."  Harrington, 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.  Id.  Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Id. (quotation marks omitted).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law."  Woodford v. Viscotti, 537 U.S. 19, 24 (2002).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 131 S. Ct. at 786-787.

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998).

## IV.  ANALYSIS

### A.  Claims Raised in Petitioner's First Motion for Relief From Judgment

Petitioner's first five habeas claims were presented to the state courts in his first motion for relief from judgment.  Respondent does not address the merits of these claims.  Rather, he

asserts that the claims are barred from review because the state courts denied relief due to Petitioner's failure to comply with Michigan Court Rule 6.508(D)(3) and demonstrate "good cause" for failing to raise them on direct review.

When a state court clearly and expressly relies on a valid state procedural bar, federal habeas review is barred, unless the petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750-751 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state-court judgment rejecting the federal claim and apply a presumption that later, unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief that could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. The Michigan Court of Appeals and the Michigan Supreme Court rejected what now form Petitioner's first five habeas claims because

11

"the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  These orders, however, did not refer to subsection (D)(3), nor did they mention Petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.   Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained.  See Guilmette v. Howes, 624 F. 3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims.  Id.

The trial court, in rejecting Petitioner's post-conviction claims, indicated that Petitioner failed to satisfy the "good cause" requirement under Rule 6.508(D)(3) for failing to raise his claims during his appeal of right. People v. Spears, No. 05-7354-01, at 61-62 (cm/ecf pages) (Wayne Cnty. Cir. Ct. Jul. 30, 2008) (Dkt. 9-11).  Such reliance on Rule 6.508(D)(3) was "an adequate and independent state ground" on which the state can rely to foreclose federal habeas review.  Amos v. Renico, 683 F.3d 720, 733 (6th Cir. 2012).  Accordingly, review of these claims is barred, unless Petitioner can demonstrate cause and prejudice to excuse his default.

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his failure to raise these claims on direct appeal.  The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right.  Evitts v. Lucey, 469 U.S. 387, 396-397 (1985)  However, it is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  See Jones v. Barnes, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

12

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . .  Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754.

Moreover, a "brief that raises every colorable issue runs the risk of burying good arguments — those that, in the words of the great advocate John W. Davis, 'go for the jugular,' — in a verbal mound made up of strong and weak contentions." Id. at 753.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." Smith v. Murray, 477 U.S. at 536 (quoting Barnes, 463 U.S. at 751-752).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal.  Meade v. Lavigne, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner fails to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised in his post-conviction motion.  Petitioner's appellate counsel raised seven claims on appeal, and though they proved to be without merit, Petitioner has failed to show that his first five habeas claims have any more merit, or that any of them are "dead-bang winners."

Petitioner's first habeas claim asserts that he was denied a fair trial because prosecution witness Todd wore a shirt referencing the victim's death. Petitioner claims that this created undue sympathy for the victim. The Court has reviewed the record and finds that this claim is not a dead-bang winner.

Defense counsel's cross examination of Todd began with a discussion of his attire. See 11/3/2005 Trial Tr. at 47-49 (Dkt. 9-4). He used it to establish that the witness was a close friend of the victim. Defense counsel suggested that the icons and color of the shirt, as well as one of the victim's tattoos, indicated that both Todd and the victim were members of the "Barlow Boys" street gang. He asked Todd if he had an agenda when he came to court to testify, and Todd responded that he did. Defense counsel went on to suggest that the victim and Todd had intended to rob Petitioner and he was now covering up for a robbery-gone-bad. In other words, defense counsel used the witness's attire as an entry point for attacking the witness's credibility, to establish his bias, and to further the defense theory that Petitioner acted in self-defense. The fact that a close friend of the victim mourned the loss of the victim in itself was not surprising or especially prejudicial. The shirt did not have a photograph of the victim, it did not suggest that the victim was murdered, and it did not suggest that Petitioner was responsible for the killing. Rather, it had symbols and colors that allowed defense counsel to suggest a gang affiliation and open an effective line of cross examination.

The case is, therefore, reasonably distinguishable from another case, Holbrook v. Flynn, 475 U.S. 560 (1986), were four uniformed state troopers arrayed themselves behind the defendant at his trial for murdering a trooper. The problem in Holbrook was that the presence of the troopers was so inherently prejudicial that it branded the defendant with an "unmistakable mark of guilt." Id. at 571. In Carey v. Musladin, 549 U.S. 70, 76-77 (2006), in contrast, where

14

members of a murder victim's family wore buttons during trial displaying the victim's image, the Supreme Court held that such private-actor conduct was distinguishable from the conduct in Holbrook, and it found that the Court had not clearly established a rule prohibiting such private conduct. Therefore, appellate counsel was not ineffective for failing to raise a claim regarding the witness's attire. The claim was not clearly stronger than the ones raised in the appellate brief.

Petitioner's next habeas claim asserts that the prosecutor committed acts of misconduct at trial. Petitioner asserted that Todd lied when he indicated that he had never been convicted of crimes involving theft or dishonesty in the last 10 years. He also asserts that Antoine Williams lied about not being part of the "Barlow Boys," but, instead, that he was a member of a rap ground called the "Third World Hustlers." Petitioner argues that the prosecutor let this false testimony go uncorrected.

"The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Lochmondy, 890 F.2d 817, 822 (6th Cir. 1989) (citing United States v. Bagley, 473 U.S. 667, 678 (1985)). "In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." Id. "The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." Id.

Petitioner supports his claim with a print-out of Todd's arrest record. The record indicates that Todd was arrested 15 times between 1989 and 2003. The record does not indicate whether any of the arrests resulted in convictions. Arrest Search at 6-7 (cm/ecf pages) (Dkt. 9-

15

12).  Accordingly, Petitioner has failed to demonstrate that Todd's testimony was false or that the prosecutor knew it was false.  Petitioner has also failed to show that Williams' testimony regarding membership in the "Barlow Boys" or "Third World Hustlers" was false, that the prosecutor knew it was false, or that it had any bearing on the outcome of the trial.  Appellate counsel was not ineffective for failing to include this unsupported claim in Petitioner's direct appeal.  Moreover, the other evidence and testimony presented at trial made it rather clear that Todd and Williams were close with the victim and were predisposed to testify in favor of the prosecution.  Even if Todd had prior convictions involving dishonesty that might have been used to further attack his credibility, the Court is not convinced it would have added much weight to the defense.  This omitted claim was not a dead-bang winner.

Petitioner next claims that he was entitled to an outright dismissal of the charges because of the false testimony of Todd and Williams at the preliminary examination.  Again, because Petitioner failed to establish that the witnesses' testimony was false, he has failed to show that his counsel was ineffective for failing to raise this claim on appeal.

Lastly, Petitioner claims that he was denied his right to evidentiary hearing on his ineffective assistance of appellate counsel claim in the state courts, where he could have established a factual basis for these claims.  This claim falls beyond the scope of federal habeas review.

In Michigan, a trial court may hold a hearing for claims of ineffective assistance of counsel when the claim depends on facts not on the record.  People v. Ginther, 212 N.W.2d 922, 925 (Mich. 1973).  However, there is no clearly established constitutional right to a state-court evidentiary hearing to establish a claim of ineffective assistance of trial counsel.  Hayes v. Prelesnik, 193 F. App'x 577, 584-585 (6th Cir. 2006); see also Poindexter v. Jones, No. 1:05-

CV-00833, 2008 WL 5422855, at *4 (W.D. Mich. Dec. 30, 2008) ("There is, however, no clearly established federal law announced by the United States Supreme Court that a defendant has a constitutional right to an evidentiary hearing [in state court] to establish a claim of ineffective assistance of counsel.").   It was within the state court's discretion to determine whether Petitioner made a sufficient evidentiary proffer to merit a full hearing.   Petitioner had no constitutional right to such a hearing.   Because it is not the province of a federal habeas court to re-examine state-court determinations of state-law questions, this Court cannot grant relief based on the state court's decision not to grant Petitioner a hearing on his post-conviction claims.   See Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Estelle v. McGuire, 502 U.S. 62, 68 (1991).

Accordingly, Petitioner has failed to demonstrate that his appellate counsel provided ineffective assistance by failing to include Petitioner's first set of post-conviction claims in Petitioner's direct appeal.   It follows that Petitioner has not demonstrated cause to excuse his procedural default nor prejudice.   Additionally, for the reasons discussed above, Petitioner's claims are without merit.

### B.  Claims Raised in Petitioner's Second Motion for Relief From Judgment

Petitioner's sixth through eighth habeas claims were presented in his second motion for relief from judgment and concern the failure of the prosecutor to call four witnesses at trial – Amando Stewart, Janice Goolsby, and Jacquieline Ballet, and Aaron Ballet.   Petitioner alleges that these four witnesses gave statements to police, and their testimony would have been favorable to the defense.   He argues that the prosecutor was required to call them and that his defense attorney was ineffective for failing to do so.   Lastly, he asserts that the state courts erred in failing to hold an evidentiary hearing on these claims.

Respondent asserts, in part, that the claims are barred from habeas review because the state courts relied on a procedural rule prohibiting successive post-convictions motions — Michigan Court Rule 6.502(G) — in denying Petitioner relief.  The Court agrees.

Under Michigan law, a defendant may file only one motion for relief from judgment.  <u>See</u> Mich. Ct. R. 6.502(G)(1).  The rule provides a narrow exception for cases in which a retroactive change in the law occurred after the first motion for relief from judgment was filed.  <u>See</u> Mich. Ct. R. 6.502(G)(2).  A defendant may not appeal the denial or rejection of a successive motion. <u>See</u> Mich. Ct. R. 6.502(G)(1).  The trial court denied Petitioner's second motion for relief from judgment as improper under Rule 6.502(G).  Petitioner attempted to appeal this decision, but both state appellate courts denied his applications for leave to appeal on jurisdictional grounds, citing Rule 6.502.

Rule 6.502(G) was a firmly established and regularly followed procedural rule sufficient to invoke the doctrine of procedural default.  <u>See</u> <u>Porter v. Smith</u>, 197 F. Supp. 2d 827, 832-833 (E.D. Mich. 2002).  Because Petitioner's second motion for relief was rejected by the trial court pursuant to Michigan Court Rule 6.502(G), his sixth through eighth claims are procedurally defaulted.  <u>Porter</u>, 197 F. Supp. 2d at 833.

Petitioner cannot attempt to establish cause to excuse this procedural default by placing blame on his appellate counsel.  This is because Petitioner could have, but did not, raise these new claims on his own in his first motion for relief from judgment.  The Court notes that Petitioner's Freedom of Information Request, in which he claims he obtained the facts for these claims, is dated May 13, 2007.  MFOIA Request at 36 (cm/ecf page) (Dkt. 19).  And his first motion for relief from judgment was filed about a year later, on May 15, 2008.  Accordingly, Petitioner could have included these claims in his first motion for relief from judgment.

Petitioner does not acknowledge or discuss the timing of the receipt of the new evidence, and, thus, he does not address his failure to raise his claims in his first motion.

Moreover, Petitioner cannot demonstrate that he will be actually prejudiced by a failure to review his claims on the merits. "Prejudice, for purposes of procedural default analysis, requires a showing that the default of the claim not merely created a possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." Jamison v. Collins, 291 F.3d 380, 388 (6th Cir. 2002) (citing United States v. Frady, 456 U.S. 152, 170-171).

Petitioner's new claims mention four witnesses, but he provides only specific information regarding one, Amando Stewart. Statement at 37-42 (cm/ecf pages) (Dkt. 19). Stewart told police that he was sitting in a Taco Bell with his girlfriend when a man, presumably Petitioner, came inside asking for a ride. Stewart gave the man a ride, during which he told Stewart that he had just shot at a man at least 21 times when the man tried to rob him.

First, Petitioner has not shown that this witness statement was withheld from defense counsel prior to trial. There is no indication in the record of an unfulfilled discovery requests by defense counsel. Nor is there a statement or affidavit from trial counsel that he did not receive this police report. But, perhaps more importantly, it is not very difficult to see why defense counsel would chose not to call Stewart as a witness. While Petitioner's statements to Stewart did indicate that he shot the victim because he was being robbed, he claimed to have shot at the victim 21 times. This admission, together with the evidence that the victim turned and attempted to run from the porch during the shooting, would have only served to further weaken Petitioner's self-defense claim. The absence of Stewart's testimony did not work to Petitioner's actual and substantial disadvantage.

Petitioner does not provide statements from the other three witnesses he lists. He claims that Goolsby told the prosecutor that the police were looking for a person known as B.J. or D.J. in connection with the shooting, but Petitioner does not explain in anyway how this information would have benefitted his defense. Lastly, Petitioner lists Jacqueline and Aaron Ballet as uncalled witnesses, but not only does his not provide statements from these individuals, he does not even indicate their connection to the case.

Finally, Petitioner included the affidavit of Cornelius Carswell to his amended petition, even though he is not one of the four individuals Petitioner claims that police failed to disclose. See Carswell Aff. at 45-46 (cm/ecf pages) (Dkt. 19). Carswell's affidavit basically asserts that the day after the shooting he heard statements from the victim's associates indicating that the victim was trying to rob Petitioner and that they should have stopped him. Carswell does not claim in the affidavit, however, that he spoke with police or defense counsel, or that anyone else connect to the case could identify him. That is, there is no evidence at all that he was a known witness at the time of trial. Therefore, Petitioner has failed to show that the authorities suppressed this witness or that his counsel was ineffective for failing to locate or call him. Indeed, Carswell's affidavit is dated May 6, 2008, well after trial. Therefore, Petitioner has failed to demonstrate any viable legal claim related to the failure of Carswell to testify at trial. And again, the date of the affidavit indicates that any claim regarding Carswell could have been raised in Petitioner's first motion for relief from judgment. Accordingly, Petitioner has failed to demonstrate cause or prejudice to excuse the procedural default of his sixth, seventh, and eighth claims.

One final exception to the procedural default rule, known as the "fundamental miscarriage of justice" exception, allows review of defaulted claims if the petitioner can show

that the constitutional errors he alleges "'ha[ve] probably resulted in the conviction of one who is actually innocent.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Murray, 477 U.S. at 496). In order to be entitled to the actual-innocence exception, however, a petitioner must present "new and reliable evidence that was not presented at trial" that "show[s] that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 299 (1995).

"To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327. It is not sufficient to show merely that the evidence raises a reasonable doubt that did not otherwise exist. See id. at 329 ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."). "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." Pitts v. Norris, 85 F.3d 348, 350-351 (8th Cir. 1996); accord Schlup, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"). "Actual innocence," according to the Supreme Court, "means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). In short, "the Schlup standard is demanding," McQuiggin v. Perkins, 133 S. Ct. 1924, 1936 (2013), with the result that "tenable actual-innocence gateway pleas are rare." Id. at 1928.

Nothing Petitioner has provided the Court comes close to demonstrating his actual innocence. The case was a fairly typical one involving a claimed self-defense from a robbery. The prosecution presented witnesses and evidence indicating a shooting that continued after the

21

alleged aggressor began to flea.  Indeed, the victim was shot in the back.  Petitioner presented witnesses in support of his claim that the victim had initially attempted to rob him, a proposition the jury might have believed but still found insufficient to justify the shooting given the evidence that the victim began to flee.  After hearing all of the evidence, the jury convicted Petitioner of the lesser offense of manslaughter.  Petitioner's scant proffered new evidence does not convince the Court that he is actually innocent of that crime, the assault, or the firearm charges.  Accordingly, his claims are procedurally barred from review, and the Court denies the petition.

### C.  Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that . . .  jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327.  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  Id. at 336-337.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that this resolution of the petition is not reasonably debatable, nor does Petitioner deserve encouragement to proceed further in federal court prior to the exhaustion of his state court remedies, and, therefore, declines to issue a certificate of appealability.

### D.  Leave to Proceed on Appeal **In Forma Pauperis**

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis ("IFP") is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits.  Foster, 208 F. Supp. 2d at 765.  The Court concludes that an appeal in this case could be taken in good faith.  Therefore, the Court grants Petitioner permission to proceed IFP on appeal.

### V. CONCLUSION

For the reasons stated above, the Court denies the petition for writ of habeas corpus (Dkt. 1).   The Court declines to issue Petitioner a certificate of appealability, but the Court grants Petitioner permission to proceed on appeal in forma pauperis.

SO ORDERED.

Dated:  October 30, 2015                    s/Mark A. Goldsmith
      Detroit, Michigan                    MARK A. GOLDSMITH
                                    United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 30, 2015.

s/Karri Sandusky
Case Manager